### HENRY H. SHUFELDT *et al.*

*v.*

### ADOLPH BOEHM *et al.*

*Filed at Ottawa November 17, 1880.*

1. CHANCERY JURISDICTION—*enjoining sale under execution at the suit of another creditor.* A court of equity will not entertain jurisdiction of a bill by a creditor, whose debt is merely a legal one, to enjoin the sale of the goods of his debtor under an execution against him, upon the ground that the execution issued upon a judgment fraudulently confessed by the debtor in favor of one to whom he was not indebted at the time, where the complainant has not obtained judgment upon his demand, even though not due. In such a case the complainant must first establish his demand at law before he can impeach the *bona fides* of the judgment, execution and levy upon his debtors' goods.

2. SAME—*creditor's bill to remove fraudulent incumbrance.* When the creditor seeks to remove a fraudulent incumbrance or conveyance out of the way of his execution, he may file his bill as soon as he obtains his judgment at law.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. SHUFELDT & WESTOVER, for the appellants:

The complainants should not have been required to first obtain judgment at law, because it was impossible for them to do so without losing all benefit a court of equity could give. *Greenway* v. *Thomas*, 14 Ill. 271; *Scott* v. *McMillan*, 1 Litt. 302.

An attaching creditor who has a lien upon his debtor's property by attachment, may file his bill in equity to remove a fraudulent conveyance of, or incumbrance upon, the property attached, and to preserve it until his lien becomes perfected in judgment. *Cogburn* v. *Pollock*, 54 Minn. 659; *Stone* v. *Anderson*, 6 Foster, 506; *Hunt* v. *Field*, 1 Stockt. 36; *Bigelow* v. *Andrews*, 31 Ill. 323; Drake on Attachments, 225.

Mr. B. M. SHAFFNER, for the appellees:

A simple contract creditor, whose rights are not yet reduced to judgment, is not entitled to an injunction restraining the disposition of his debtor's property under certain judgments alleged to have been obtained in fraud of his rights, even though he has begun suit at law upon his claim.   High on Inj. secs. 26, 27, 94, 250; High on Receivers, sec. 406; *Wiggins* v. *Armstrong,* 2 Johns. Ch. 144; *Bayard* v. *Fellows,* 28 Barb. 451; *Wintringham* v. *Wintringham,* 20 Johns. Ch. 296; *Angell* v. *Draper,* 1 Vern. 399; *Shirley* v. *Watts,* 3 Atk. 200; *Bennett* v. *Musgrove,* 2 Ves. 51; *Young* v. *Frier,* 1 Stockt. 465; *Holdridge* v. *Geoyune,* 3 C. E. Green, 26; *Uhl* v. *Dillon,* 10 Md. 500; *Rich* v. *Levy,* 16 id. 74; *Rhodes* v. *Cousins,* 6 Rand. 188; *McGoldrick* v. *Slevin,* 43 Ind. 522; *Phelps et al.* v. *Foster et al.* 18 Ill. 309; *Bigelow et al.* v. *Andress et al.* 31 id. 323; *Heacock et al.* v. *Durand et al.* 42 id. 230; *Newman et al.* v. *Willetts,* 52 id. 98; *Moshier* v. *Meek et al.* 80 id. 79; *Martin et al.* v. *Michael et al.* 23 Mo. 50; *Melville* v. *Brown,* 1 Harrison, 367.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was a bill in chancery, filed by appellants against appellees in the Superior Court of Cook county, to enjoin the sale of certain goods and chattels, levied upon by the sheriff of Cook county as the property of Boehm & Hartman, under an execution in favor of Henry Abrahams.   The court sustained demurrers to the bill, and appellants electing to stand by their bill, a decree was entered dismissing the same, which decree, upon appeal, was affirmed by the Appellate Court for the First District, and the case is now before this court by appeal from the Appellate Court.

It appears from the bill that Boehm & Hartman were wholesale and retail dealers in liquors in the city of Chicago, and were customers of Henry H. Shufeldt & Co., and of P. W. Engs & Sons, the appellants in this case, who were

also engaged in the wholesale liquor business; that, by representations of their solvency and high commercial standing, Boehm & Hartman obtained an extensive credit with these firms, and by means thereof became indebted to them in large amounts, for which they held their promissory notes; that while so holding their notes, and before any of them matured, Boehm & Hartman confessed a judgment in the Cook county circuit court, in favor of Henry Abrahams, for $5419.45, and on the same day an execution was sued out and levied upon all the goods and effects belonging to them; that the judgment by confession was entered upon two notes executed by them to the said Abrahams, without consideration and in pursuance of a conspiracy to defraud complainants; that all their property, not covered by the execution, had been previously assigned or otherwise disposed of for the same purpose; that since the seizure under the execution, of the property of Boehm & Hartman, some of their notes have matured, and suits by attachment have been commenced upon them, and the writs levied on the goods and effects of Boehm & Hartman in the hands of the sheriff, but that before appellants can obtain judgment in their attachment suits, or the other notes will mature, the property will be sold by the sheriff and the proceeds paid over to Abrahams, and complainants will thereby lose their demand altogether.

It will be perceived from this recital of facts, which are admitted by the demurrers, the simple question presented for determination is, whether a bill in equity will lie against one who is about to fraudulently dispose of his property, at the suit of a creditor who has never reduced his demand to a judgment.

This very question has been decided a number of times by this court, and it can no longer be regarded as an open one. The bill in some of its features resembles a creditor's bill, but it is not one, nor does it belong to any species of that class of bills where courts of equity have, so far as we are

advised, assumed jurisdiction and administered equitable relief.

In *Miller et al.* v. *Davidson,* 3 Gilman, 518, where the limitations of the doctrine on this subject were under consideration, it was said:

"Where a creditor seeks to satisfy his debt out of some equitable estate of the defendant which is not liable to a levy and sale under an execution at law, then he must exhaust his remedy at law by obtaining judgment, and getting an execution returned *nulla bona,* before he can come into a court of equity for the purpose of reaching the equitable estate of the defendant, and this is necessary to give the court jurisdiction, for otherwise it does not appear but that the party has a complete remedy at law. That is what may be strictly termed a creditor's bill. There is another sort of creditor's bill, very nearly allied to this, yet where the plaintiff is not bound to go quite so far before he comes into this court, and that is where he seeks to remove a fraudulent incumbrance out of the way of his execution. There he may file his bill as soon as he obtains his judgment. There are some peculiar cases, however, where a party seeks a satisfaction of his debt directly, in which he may come into a court of chancery in the first instance, without first obtaining a judgment.

"Thus, in the case of *Russell* v. *Clark's Exr.* 7 Cranch, 87, Chief Justice MARSHALL says: 'If a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance to that court, which will not require that the claim should be first established in a court of law.' "

It is manifest that the case at bar does not fall within this exception to the general rule, which requires a party to first establish his claim at law before he is permitted to go into a court of chancery.

In the present case there is no pretence that the demand of the complainants was of an equitable character, nor is it

pretended that the property sought to be reached is in any sense an equitable estate. The whole difficulty with complainants consists in the fact that their debtors were about to dispose of their property before they would be able to obtain their judgment. This is a risk that all persons incur who sell merchandise on time to dishonest customers, and every one who does an extensive credit business must, to a greater or less extent, assume risks of this character. While great hardships, as in the present case, may and doubtless do occur under the operation of the rule which forbids the interposition of a court of equity in cases of this character until a judgment at law is first obtained, yet, the rule itself is founded upon the wisest policy. If the property of an honest, struggling debtor could be tied up by injunctions upon mere unadjusted legal demands, he would be constantly exposed to the greatest hardships and grossest frauds, for which the law would afford no adequate remedy. By taking his property out of his hands before the claim is due, or before its justice has been established by a judgment, in many cases would be to deprive him of the means of payment, and even of the means of defending himself against a vexatious and oppressive suit. In other cases, to prevent ruin to his business pending such litigation, he would be forced into unconscionable compromises involving losses he would be unable to bear. Moreover, such a rule as that contended for would be a constant temptation to selfish and avaricious creditors to endeavor, by the institution of such suits, to obtain an unjust advantage over other creditors, and, by reason thereof, litigation would be greatly increased, to the detriment of business generally, and to the ruin of many honest, struggling debtors. Every consideration, therefore, of public policy demands a strict adherence to the rule which forbids the institution of such suits.

In *Phelps et al.* v. *Foster et al.* 18 Ill. 309, which was a bill for an injunction alleging that Foster was indebted to complainants by note in the sum of $2080, and that just

before the note matured he had fraudulently disposed of his goods to his brother; that complainants had, since the maturity of the note, commenced a suit at law to recover a judgment on the note, but that before such judgment could be obtained, the goods so fraudulently transferred would be disposed of and placed beyond the reach of complainants, and the injunction having been dissolved by the court below, and the bill dismissed, this court said: " The injunction was properly dissolved, because no case was made out by the bill. If the allegations of the bill are true, the sale was void absolutely as to the creditors, and complainants had an adequate remedy by an attachment; but even if that had not been the case, we are not aware of any principle of equity jurisprudence which will justify the issuing of an injunction in such a case to compel the parties to hold the goods, pending a trial at law, to see if they will not be wanted to answer an execution upon a judgment which the complainant hopes to obtain. The bill was devoid of equity on its face."

This case is directly in point. It contains every supposed equitable element that is relied upon in the case at bar, and must be regarded as conclusive of it. The same rule is distinctly enunciated in *Bigelow et al.* v. *Andress et al.* 31 Ill. 322; *McNab* v. *Heald,* 41 id. 326; *Heacock et al.* v. *Durand,* 42 id. 230; *McConnel* v. *Dickson et al.* 43 id. 100; *Horner* v. *Zimmerman et al.* 45 id. 14.

Other and later cases might be cited to the same effect, but it is unnecessary. As already remarked, it is no longer an open question in this court.

The judgment of the Appellate Court was right, and must, therefore, be affirmed.

*Judgment affirmed.*